**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER ALLEN, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> STATE OF NEW JERSEY, PUBLIC : <br> DEFENDER, : <br> : <br> Defendant. : | Civil Action No.: 16-8661 (FLW) (DEA) <br><br> **OPINION** |

**WOLFSON**, **United States District Judge:**

Presently before the Court is defendant State of New Jersey Office of the Public Defender's ("Defendant" or the "NJOPD") motion to dismiss the Complaint filed by *pro se* plaintiff Christopher Allen ("Plaintiff"). Although his four page, handwritten Complaint is no model of clarity, it appears that Plaintiff was an employee at the NJOPD, but was terminated when he made a false complaint of workplace violence against his supervisor. Nonetheless, after arbitration, Plaintiff was reinstated to his position at the NJOPD, where he was allegedly subjected to employment-related discrimination and retaliation for challenging his termination before an arbitrator.[1] For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

---

[1] Prior to filing the instant Complaint, Plaintiff filed two separate federal actions against the NJOPD, which arise from the same common nucleus of operative facts. As discussed infra, both of those actions have been dismissed.

1

In his Complaint, Plaintiff fails to assert any factual allegations to support his claims against the NJOPD. Instead, Plaintiff has attached various documents to the Complaint as exhibits, including an arbitration opinion and award (hereinafter, the "Arbitration Opinion"), dated September 18, 2015, and performance reviews and numerous work emails. While Plaintiff has failed to explain the significance of these exhibits, for the purposes of this motion, I will attempt to recount the general facts as set forth in the Arbitration Opinion and other documents. See Mayer v. Belichick, 605 F.3d 223, 229-30 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Importantly, the following facts are simply allegations. In addition, the Court will liberally construe the Complaint and consider all claims that can fairly be gleaned.

a.     **Allegations from the Arbitration Opinion**

Prior to his termination, Plaintiff was employed as a Senior Clerk Typist at the NJOPD.[2] See Compl., Ex. 1 at pg. 3. In March 2011, Plaintiff filed a workplace complaint against Iris Figueroa ("Figueroa"), his former supervisor, accusing Figueroa of throwing paper that landed in his crotch. Id. As a result of his complaint, Defendant initiated a Workplace Violence investigation, which was conducted by Dale Jones ("Jones"), the Workplace Violence

---

[2] In addition to his four-page Complaint, which does not assert any factual allegations, Plaintiff has attached forty-seven pages of exhibits. However, Plaintiff has not numbered those exhibits. For the purpose of this motion, the Court will collectively refer to the exhibits as "Exhibit 1," and then cite to the specific page number(s) of the document being referenced.

2

Coordinator.³  Id. at pg. 4.  After completing the investigation, Jones concluded that Plaintiff's allegations against Figueroa were unsubstantiated.  Id. at pgs. 3-4.

In a separate incident, on December 18, 2013, Plaintiff and Figueroa were involved in another dispute concerning Plaintiff's use of Post-it notes on the files in the office.  Id.  The dispute between Plaintiff and Figueroa escalated, which prompted Linda Burke ("Burke"), the managing attorney at the NJOPD, to intervene.  Id.  When Burke later asked Plaintiff what had occurred, Plaintiff told Burke that Figueroa had "punched [him] in the penis with a closed fist." Id. at pg. 5.  Figueroa denied that allegation.  Id. at pg. 6.

Shortly thereafter, Defendant initiated another Workplace Violence investigation, which was also conducted by Jones.  Id.  At the conclusion of that investigation, Jones found that Plaintiff had deliberately made a false claim of workplace violence against Figueroa, and that "there were no set of circumstances under which any reasonable person could infer that [the alleged act] would have occurred." Id. at pg. 7.  Because of his deliberately false complaint, Defendant terminated Plaintiff on April 11, 2014.  Id. at pg. 1.  The Communication Workers of America ("CWA"), Plaintiff's union, then challenged Plaintiff's termination, pursuant to the terms of the collective bargaining agreement between the CWA and Defendant.  Id. at pgs. 1-2.

On June 4, 2015, the arbitrator held a hearing at which "the parties argued orally, examined and cross-examined witnesses, and introduced documentary evidence into the record."

---

³ While the investigation was ongoing, on March 27, 2012, Plaintiff filed a federal lawsuit against the State of New Jersey and other individual defendants, alleging that he suffered from harassment and retaliation during the course of his employment.  However, after the defendants filed a motion to dismiss, the court granted the unopposed motion and dismissed the complaint on August 20, 2012.  That action was captioned Allen v. State of New Jersey, No. 3:12-cv-3741 (AET) (TJB).

Id. at pg. 2.  On September 18, 2015, the arbitrator issued her decision, concluding that the weight of the evidence suggests that Figueroa did not hit Plaintiff in the penis.  Id. at pg. 14.  However, the arbitrator further concluded that Plaintiff did not "willfully and knowingly" file a false complaint against Figueroa.  Id. at pgs. 11-12.  As such, the arbitrator found that "removal as an initial disciplinary measure is not progressive and did not give [Plaintiff] an opportunity to correct his behavior."  Id. at pg. 13.  Plaintiff was then reinstated with back pay, benefits and seniority; however, the arbitrator imposed a seven day unpaid suspension "[b]ecause falsely accusing someone of workplace violence is a serious matter warranting a consequence beyond minor discipline."  Id.

**b.     Allegations from the Performance Reviews and Work Emails**

On October 5, 2015, Plaintiff was reinstated to his position at the NJOPD, but he was transferred from the Trenton office to the Camden office.  Id. at pgs. 20, 26.  During his tenure at that office, Plaintiff received several performance reviews.  In June 2016, Marilyn Lopez-Rivera ("Lopez-Rivera"), a supervisor at the NJOPD, performed an evaluation in which she concluded that Plaintiff had "not yet mastered [his] job expectations and [that his] job performance has been most unsatisfactory."  Id. at pg. 26.  Lopez-Rivera stated that Plaintiff "work[s] extremely slowly and make[s] numerous errors, creating adverse impacts for our clients and other staff members."  Id.  She also found that Plaintiff "call[s] out at least once a week, which creates a burden on others… [and] there have been some instances in which [Plaintiff] appear[s] to be sleeping at [his] desk and [his] personal hygiene continues to be a problem."  Id.

In a subsequent evaluation, Lopez-Rivera concluded that Plaintiff had "shown some improvement with regard to [his] productivity by working at a faster rate," but "[he] ha[s] continued to make an excessive number of mistakes in opening files and are still failing to

4

perform this assignment at an acceptable level of proficiency." Id. at pg. 27. Lopez-Rivera also noted that Plaintiff was still not able to perform the required job responsibilities, including the capacity to "close files, process vouchers and pool-outs and cover the front desk." Id.

In addition, Plaintiff met with Harold Katz ("Katz"), a deputy at the NJOPD, to discuss his job performance. Id. at pg. 31. In a memorandum about the meeting, Katz said that "[h]e expressed [his] appreciation that in recent week [Plaintiff] ha[s] been coming to work regularly and on time." Id. However, Katz wrote that, "[w]ith respect to the quality of [the] work, [Plaintiff] continue[s] to make many mistakes in the opening of files," and that "[his] lack of productivity continues to be a problem." Id. Katz explained that these mistakes "negatively impact the quality of representation this office provides and have severe consequences for the affected clients." Id.

Katz also noted that that "[Plaintiff] attributed [his] poor work quality to the distraction created by 'others walking behind' [him] while [he was] working and [] requested [to] be put in a work space 'like [he] had in Trenton' where… other people were not around…." Id. Katz claims that he advised Plaintiff that the Camden office "do[es] not have private work offices for [its] clerical staff," but the "area [for the clerical staff] is one of the very quietest areas of our office." Id. Katz also reported that Plaintiff still had problems with personal hygiene, and that "[he] again stressed the importance of [] coming to work free of any unpleasant body odors." Id.

In addition to his performance evaluations, Plaintiff has attached emails to his Complaint about his working conditions and disputes with his fellow employees.[4] On March 1 2016,

---

[4] Plaintiff has attached two emails from 2015, but these emails concern administrative matters, including information about vacation days and direct deposit. Id. at pgs. 30, 33. Plaintiff has also attached several emails from 2016. Id. at pgs. 15, 18, 19, 43, 45. However, the Court struggles to see the relevance of these emails to the claims in the Complaint. For instance, on June 10, 2016, Plaintiff sent an email to Lopez-Rivera in which he simply stated: "I TAKE A

5

Plaintiff sent an email to Gaye Palmer ("Palmer"), an unidentified individual. Id. at pg. 37. In that email, Plaintiff stated that Katz informed him that a female employee felt "uncomfortable" because "[he] was staring at her with [his] legs open and breathing hard." Id. at pg. 37. Plaintiff claimed that "[he] did nothing wrong," and that "[he] was just sitting working [and] putting papers in files and she camee [sic] back their [sic] [to] put papers in [the] file too…." Id.

On that same day, Plaintiff sent Palmer another email explaining that "[he] thought [the female employee] need [sic] to get back where [he] was working to [] file again so [he] stop [sic] [his] filing and to see if she need [sic] to file… but she did not [and] she turn [sic] around and look [sic] at [him] and [he] look [sic] at her when she finish." Id. at pgs. 29, 36. In a separate email to Palmer, Plaintiff said that Katz told him "to sit with [his] legs closed…." Id. at pg. 35. In another email that day, Plaintiff notified Palmer that "[he] told [Katz] to move [him] to another office than [sic] if someone feels uncomfortable with [him]." Id. at pg. 34.

On March 1, 2016, Plaintiff sent another email to Palmer regarding a separate issue – his personal hygiene. Id. at pg. 42. Specifically, Plaintiff wrote: "Katz tell me that a co worker [sic] says I smell complaint [sic] about me," but Plaintiff explained that "[he] take [sic] a bath clean and change clothes." Id. It does not appear that Palmer responded to this email.[5]

---

VACATION DAYS JUNE 20, 2016 TO JUNE 24, 2016." Id. at pg. 19. In response, Lopez-Rivera stated that his "request is approved for all days." Id.

[5] On April 1, 2016, Plaintiff filed a federal lawsuit against the NJOPD, asserting a claim under the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A § 34:19-1 et seq., as well as claims for (i) negligence under New Jersey common law; (ii) wrongful termination under New Jersey common law; and (iii) conspiracy in violation of 42 U.S.C. § 1985(3). In a letter order, dated December 5, 2016, this Court dismissed the CEPA claim as time-barred, as well as the other claims as deficiently plead. Nonetheless, the Court provided Plaintiff with an additional thirty days to amend his Complaint, but he failed to do so. On February 14, 2017, this Court ordered the dismissal of the Complaint. That action was captioned as Allen v. State of New Jersey, No. 3:16-cv-1840 (FLW) (DEA).

On June 10, 2016, Plaintiff sent an email to Palmer and Regina A. Reeder ("Reeder"), the employee relations coordinator at the NJOPD, stating that "[he] do[es] not want to work at the state of new jersey public defender in Camden," and that "[he] want[ed] a transfer as soon as possible." Id. at pg. 17. Plaintiff stated that he had "failed" his first evaluation, and that "[t]his is retaliation for cwa 1033 won [his] employment reinstated award and all my back pay award." Id. Three days later, on June 13, 2016, Reeder responded that his "request for reassignment to another office has been forwarded to Judy Smith, [and that] she will advise you if something becomes available." Id. It does not appear that Plaintiff was transferred to another office.

In July 2016, Plaintiff was subject to a disciplinary action, although it is unclear as to why or how he was disciplined. Id. at pg. 20. Nonetheless, Plaintiff sent an email to three unidentified individuals in which he stated that "[he] sent a fax to [Reeder] that [he] appeal disCiplinary [sic] action and fax cwA [sic] UNION 1038 IN WOODBURY, NJ." Id. Relatedly, in August 2016, it appears that Plaintiff was served with a preliminary notice of disciplinary action. Id. at pg. 32. In an interoffice memorandum, Reeder informed Plaintiff that he was subject to a twenty day suspension without pay. Id. It is unclear why he was disciplined. Id. Plaintiff appealed the decision. Id.

On November 4, 2016, Plaintiff sent an email to Yamil Serrano ("Serrano"), a supervisor at the NJOPD, complaining that "someone is tampering with [his] work here in this office." Id. at pg. 16. Plaintiff stated that someone secretly placed cases that needed to be completed on his desk, but he did not find the case, so "[he was] not [] able to finish [his] work." Id. It is unclear whether Serrano responded to this email, or whether Plaintiff was disciplined for not completing the work.

    **c.**    **Procedural History**

On November 18, 2016, Plaintiff filed the instant Complaint against the NJOPD, asserting the following claims: (i) retaliation in violation of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title VII"); (ii) disparate treatment in violation of Title VII; (iii) racial discrimination and harassment in violation of Title VII; (iv) intentional and/or negligent infliction of emotional distress under New Jersey common law; (v) defamation under New Jersey common law; (vi) retaliation under 42 U.S.C. § 1983; (vii) conspiracy to retaliate under 42 U.S.C. § 1983 and/or 42 U.S.C. § 1985; (viii) violation of Title I of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101, et seq.; (ix) violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.; (x) violation of the Genetic Information Non-Disclosure Act ("GINA"), 42 U.S.C. § 2000ff, et seq.; (xi) negligent training under 42 U.S.C. § 1983; (xii) violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983; and (xiii) negligence under New Jersey common law.[6]  Compl. at pg. 1. Plaintiff requests compensatory damages in the amount of "One Hundred Million Dollars," and punitive damages in the amount of "Two Hundred Million Dollars." Id. at pgs. 1-2.  On January 17, 2017, Defendant filed its motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), which Plaintiff has opposed.

## II.     STANDARD OF REVIEW

---

[6] Plaintiff does not assert his claims in separate counts.  Instead, he simply asserts claims for "Retaliation, Unfair Treatment, Discrimination, Harassment, Title VII, emotional distress, Defamation, Conspiracy Retaliation, the American Disability (Act), Dignity, Improperly Training me work, Age Discrimination, Discriminatory behavior, Pattern of Retaliation, Genetic Info Nondisclosure Act, Treated indifferently, to punish me for winning my Reinstated to State of New Jersey by CWA 1003 Arbitration, Age Discrimination, Race Discrimination, Retaliatory Damages, Sex Discrimination… [and] Personal Injury." Compl. at pg. 1.  As discussed supra, the Court has attempted to construe any claims that Plaintiff may potentially be asserting in the Complaint.

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the… claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (internal quotation marks and citation omitted); Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) (internal quotation marks and citation omitted) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.").

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations marks and brackets omitted).  Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. (internal quotation marks omitted).  Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. (internal quotation marks and brackets omitted).

## III.   DISCUSSION

### a.   The Entire Controversy Doctrine

Defendant argues that the Complaint is barred by the entire controversy doctrine, since "[Plaintiff] previously filed two lawsuits with this Court... based on the same common nucleus of operative facts, but asserting different claims," which have been dismissed.  Def.'s Br. at pg. 11; see Allen v. State of New Jersey, No. 3:12-cv-3741 (AET) (TJB); Allen v. State of New Jersey, No. 3:16-cv-1840 (FLW) (DEA).

The Third Circuit has described the entire controversy doctrine as "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." Chavez v. Dole Food Co., Inc., 836 F.3d 205, 229 n.130 (3d Cir. 2016) (internal quotation marks and citation omitted); see N.J. Ct. R. 4:30A.  The doctrine "requires a party to bring in one action all affirmative claims that [it] might have against another party, including counterclaims and cross-claims, and to join in that action all parties with a material interest in the controversy, or be forever barred from bringing a subsequent action involving the same underlying facts." Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883,

10

885 (3d Cir. 1997) (alteration in original) (internal quotation marks and citation omitted). Where the rule is found to apply, its preclusive effect is clear: "Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine...." N.J. Ct. R. 4:30A.

Relevant here, the Third Circuit has concluded that the entire controversy doctrine "is not the right preclusion doctrine for a federal court to apply when prior judgments were not entered by the courts of New Jersey." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 138 (3d Cir. 1999); see Hoffman v. Nordic Naturals, Inc., 837 F.3d 272, 278 (3d Cir. 2016). In other words, "[t]he entire controversy doctrine will preclude claims brought in federal court only if the preclusive judgment came from a New Jersey [state] court." Bach v. McGinty, No. 12-5853, 2015 WL 1383945, at *2 (D.N.J. Mar. 25, 2015). Indeed, the Third Circuit has noted that "courts in [this] Circuit have routinely applied Paramount Aviation to reject applying [the] entire controversy doctrine when the first judgment was not rendered by a New Jersey state court." Hoffman, 837 F.3d at 278; see Burke v. Health Scis. Const. Grp., Ltd., No. 10-73, 2011 WL 1255403, at *4 (D.N.J. Mar. 30, 2011); Yantia N. Andre Juice Co. v. Kupperman, No. 05-1049, 2005 WL 2338854, at *3 (D.N.J. Sept. 23, 2005).

In the instant matter, the Court concludes that the entire controversy doctrine is not applicable here, since federal district courts rendered the prior judgments against Plaintiff, and not the state courts of New Jersey. See Paramount Aviation Corp., 178 F.3d at 138; Hoffman, 837 F.3d at 278. Rather, the Third Circuit has instructed that federal courts must apply federal claim preclusion doctrines where the judgment was not rendered by the state court. See Paramount Aviation Corp., 178 F.3d at 135; see also Hoffman, 837 F.3d at 278. However,

Defendant has not argued that the Complaint is barred on the grounds of federal preclusion principles, and as such, the Court need not address that issue.

**b.     Sovereign Immunity**

Alternatively, Defendant contends that, pursuant to the Eleventh Amendment, it is immune from suit under the ADA, ADEA and GINA.[7]  In addition, the Court *sua sponte* raises the issue of sovereign immunity in connection with the employment-related federal constitutional and state law claims.  See Bowers v. Nat'l Collegiate Athletic Ass'n, 346 F.3d 402, 417 (3d Cir. 2003) (stating that a district court may *sua sponte* raise Eleventh Amendment immunity); see also Walsh v. United States, 328 Fed. Appx. 806, 809 (3d Cir. 2009) ("Sovereign immunity may be raised by a party at any time, even on appeal, and a court may *sua sponte* raise the issue as it relates to its own jurisdiction.").

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." Interpreting that language, the Supreme Court has declared that a federal court may not adjudicate a lawsuit brought by a citizen against his own state.  Hans v. Louisiana, 134 U.S. 1, 13-14 (1890); see Edelman v. Jordan, 415 U.S. 651, 662-63 (1974) (stating that "this Court has

---

[7] While few courts have addressed GINA, the Fifth Circuit has explained that "GINA prohibits an employer from discriminating or taking adverse actions against an employee 'because of genetic information with respect to the employee.'" Ortiz v. City of San Antonio Fire Dep't, 806 F.3d 822, 826 (5th Cir. 2015) (quoting 42 U.S.C. § 2000ff-1(a)(1), (2)).  GINA also "makes it unlawful 'for an employer to request, require, or purchase genetic information with respect to an employee or a family member of the employee,' with some exceptions." Id. (quoting 42 U.S.C. § 2000ff-1(b)).  According to the Fifth Circuit, "GINA provides a private right of action, incorporating the enforcement and remedies procedures of [Title VII]." Id.

12

consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). Indeed, the Eleventh Amendment affords states immunity from suits brought by citizens in federal court, regardless of whether legal or equitable relief is sought. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); see also Thorpe v. New Jersey, 246 Fed. Appx. 86, 87 (3d Cir. 2007).

This protection extends to arms of the state – including agencies, departments and officials – when the state is the real party in interest. Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002); see Chisolm v. McManimon, 275 F.3d 315, 323 (3d Cir. 2001). For the purposes of the Eleventh Amendment, courts routinely hold that the NJOPD is an arm of the New Jersey state government. See Peterson v. Rinkus, No. 10-5316, 2011 U.S. Dist. LEXIS 57992, at *7 (D.N.J. May 31, 2011) (holding that "the [New Jersey] Office of the Public Defender is an arm of the state entitled to Eleventh Amendment immunity."); Harrison v. Atl. Office of the Pub. Defender, No. 10-2294, 2010 U.S. Dist. LEXIS 106529, at *8 (D.N.J. Oct. 4, 2010) (same); Vasilopoulos v. Superior Court, No. 08-5801, 2009 U.S. Dist. LEXIS 39306, at *20-21 n.16 (D.N.J. May 8, 2009) (same). As explained by one court, the NJOPD "is an agency established by the State of New Jersey, in the Executive Branch, to fulfill the State's obligation to provide representation to indigent criminal defendants." Vasilopoulos, 2009 U.S. Dist. LEXIS 39306, at *20-21 n.16.

Because a judgment in this action would adversely affect the State of New Jersey, the Court concludes that the NJOPD is immune from liability arising out of a suit against it in federal court, unless the claims fall within one of the three narrowly circumscribed exceptions to the application of the sovereign immunity doctrine: (i) Congress has abrogated sovereign immunity and authorized suits against the states; (ii) a state has waived sovereign immunity by

consenting to suit; and (iii) suits against individual state officers for prospective injunctive or declaratory relief to end an ongoing violation of federal law.[8]  MCI Telecomm. Corp. v. Bell Atlantic – Pennsylvania, 271 F.3d 491, 503-04 (3d. Cir. 2001).

In regard to the first exception, Congress has not abrogated sovereign immunity and authorized suits against states under the ADA or ADEA.  See Board of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 373-74 (holding that Congress did not validly abrogate the states' sovereign immunity under Title I of the ADA); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000) (holding invalid Congress' attempt to abrogate states' sovereign immunity under the ADEA); see also Kreutzberger v. Pa. Dep't of Corr., No. 16-1429, 2017 U.S. App. LEXIS 5286, at *2-3 (3d Cir. Mar. 27, 2017) ("Congress has not validly abrogated a state's immunity from suits for damages under the ADA or the ADEA.").  Furthermore, Congress has not abrogated sovereign immunity and authorized suits against states under GINA.  See Culbreth v. Wash. Metro. Area Transit Auth., No. 10-3321, 2012 U.S. Dist. LEXIS 37335, at *13-14 (D. Md. Mar. 19, 2012) (citations omitted) (holding that, "although Congress may have intended GINA to abrogate a state agency's Eleventh Amendment immunity, GINA is not a valid exercise of the congressional power to abrogate immunity," since the legislative history plainly states that

---

[8] Plaintiff has not named any individual state officers, thus the Court need not address the third exception in this Opinion.  See Ex Parte Young, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment does not preclude lawsuits against state officials, in their official capacities, to enjoin violations of federal law); see also Green v. Mansour, 474 U.S. 64, 68 (1985) (extending the holding in Ex Parte Young to violations of federal statutes, as well as the United States Constitution).

Congress based its abrogation of immunity on its Article I powers to regulate commerce, which is prohibited).[9]  Thus, the Eleventh Amendment bars claims under the ADA, ADEA and GINA.

Moreover, courts have routinely held that the Eleventh Amendment applies to claims under Sections 1983 and 1985.  See Anderson v. Pennsylvania, 196 Fed. Appx. 115, 117 (3d Cir. 2006); Galvani v. Pennsylvania, 329 Fed. Appx. 344, 346 (3d Cir. 2009).  Indeed, it is well settled that Congress did not abrogate states' sovereign immunity when it passed either Sections 1983 or 1985.  Collins v. Sload, 212 Fed. Appx. 136, 140 n.5 (3d Cir. 2007); see Owens v. Armstrong, 171 F. Supp. 3d 316, 330 (D.N.J. 2016); see also Abulkhair v. Office of Atty. Ethics, No. 16-3767, 2017 U.S. Dist. LEXIS 79754, at *12-13 (D.N.J. May 24, 2017).  Therefore, the Court holds that the following federal claims are barred: (i) retaliation under Section 1983; (ii)

---

[9] The court in Culbreth is the only court to address whether Congress has abrogated states' sovereign immunity under GINA.  However, this Court finds its reasoning to be sound.  See Culbreth, 2012 U.S. Dist. LEXIS 37335, at *14-17.  Indeed, relying on the legislative history of GINA, the court in Culbreth held that Congress expressly based the abrogation of states' sovereign immunity on its Article I powers, which the Supreme Court has expressly prohibited. Id. at *13-14; see Garrett, 531 U.S. at 364 ("Congress may not, of course, base its abrogation of the States' Eleventh Amendment immunity upon the powers enumerated in Article I."). Alternatively, the court reasoned that "the anti-discrimination goals of the statute suggest that GINA arguably may be viewed as Section 5 legislation."  Culbreth, 2012 U.S. Dist. LEXIS 37335, at *14; see Garrett, 531 U.S. at 364 (stating that Congress may validly abrogate states' Eleventh Amendment immunity when it enacts a statute under its Fourteenth Amendment, Section 5 power).  However, after examining the legislative history, the court concluded that, "[b]ecause there is no evidence of a pattern or practice of discrimination by state employers on the basis of genetics, GINA is not congruent and proportional to the harm to be remedied," and as such, "any abrogation of the Eleventh Amendment immunity was ineffective." Culbreth, 2012 U.S. Dist. LEXIS 37335, at *16; see Kimel, 528 U.S. at 88-89 (stating that courts must "determine whether the [statute] is in fact just such an appropriate remedy or, instead, merely an attempt to substantively redefine the States' legal obligations," and thus, courts must examine the legislative history to determine whether Congress has adequately "identified a pattern of [] discrimination by the States" in regard to the harm to be remedied by the statute).  The Court finds Culbreth's explanation, in light of the legislative history behind GINA, to be persuasive.

conspiracy to retaliate under Section 1983 and/or Section 1985; (iii) negligent training under Section 1983; and (iv) violation of the Equal Protection Clause under Section 1983.

Finally, a state retains sovereign immunity for all state law claims unless the state consents to suit. Raygor v. Regents of the Univ. of Minn., 534 U.S. 533, 540-41 (2002); see King v. Christie, 981 F. Supp. 2d 296, 310 n.12 (D.N.J. 2013) (stating that, under the Eleventh Amendment, a plaintiff "may not bring state law claims… against the State regardless the type of relief it seek," and that "supplemental jurisdiction does not authorize district courts to exercise jurisdiction over claims against non-consenting states."). Specifically, courts have held that the State of New Jersey has not articulated a clear waiver of sovereign immunity in regard to state common law claims, "including claims that fall within the limits of the New Jersey Tort Claims Act." Abulkhair, 2017 U.S. Dist. LEXIS 79754, at *14-17 (barring state law claims for intentional infliction of emotional distress and negligence infliction of emotion distress); see Doe v. Division of Youth & Family Servs., 148 F. Supp. 2d 462, 492 (D.N.J. 2001) (holding that common law negligence claims are barred by the Eleventh Amendment). Accordingly, the Court holds that the following federal claims are barred: (i) intentional and/or negligent infliction of emotional distress; (ii) defamation; (iii) negligence.

**c.     Failure to Exhaust**

With respect to the remaining claims under Title VII, Defendant contends that Plaintiff has failed to exhaust his administrative remedies because he did not file a charge with the Equal Employment Opportunity Commission (the "EEOC"). In opposition, Plaintiff maintains that he "made complaint at Equal Employment Opportunity Commission of United States of what occures [sic] at the State of New Jersey Office of Public Defender 101 Haddon Avenue 2nd

16

Floor Camden, New Jersey." Pl.'s Br. in Opp. at pg. 13.  In his opposition, Plaintiff has attached what appears to be a Notice-of-Right-to-Sue, dated August 24, 2016.[10]  Id. at pg. 8.

Title VII imposes strict requirements on a plaintiff that brings an action against an employer for employment discrimination.[11]  McClaren v. N.J. State Dep't of Educ., No. 14-3213, 2015 U.S. Dist. LEXIS 8253, at *9 (D.N.J. Jan. 26, 2015).  Specifically, in order to bring a claim under Title VII, "a plaintiff must file a charge of discrimination with the EEOC and procure a notice of the right to sue."  Mandel v. M&Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013); see Pizio v. HTMT Global Solutions, 555 Fed. Appx. 169, 173 (3d Cir. 2014); see also 42 U.S.C. § 2000e-5(e)(1).  In other words, "an employee must file a complaint with the EEOC to attempt to resolve the dispute before involving litigation."  Atkinson v. Lafayette College, 460 F.3d 447, 453 (3d Cir. 2006).  When the plaintiff is from the State of New Jersey, he or she must file a charge with the EEOC within 300 days of the alleged discriminatory conduct.  Cardenas v. Massey, 269 F.3d 251, 255 n.2 (3d Cir. 2001); see Pizio, 555 Fed. Appx. at 173; see also 29 U.S.C. § 626(d)(1)(B); 42 U.S.C. § 2000e-5(e)(1).

While Plaintiff argues in his opposition that he filed a charge of discrimination with the EEOC, and that the EEOC issued a Notice-of-Right-to-Sue, the Court concludes that Plaintiff has failed to adequately allege that he exhausted his administrative remedies under Title VII.  See Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997); see also Doe v. Sizewise Rentals, LLC, No. 09-3409, 2010 U.S. Dist. LEXIS 93270, at *6 (D.N.J. Sept. 7, 2010); McCann v. Veterans Haven, No. 08-5031, 2010 U.S. Dist. LEXIS 81045, at *5 (D.N.J. Aug. 9, 2010).

---

[10] This letter is not attached to the Complaint, nor is the charge of discrimination.

[11] Title VII claims are not barred by the Eleventh Amendment, since "Title VII is one of the specific instances… where Congress has expressly abrogated the states' Eleventh Amendment immunity."  Figueroa v. City of Camden, 580 F. Supp. 2d 390, 399 (D.N.J. Oct. 2, 2008).

Specifically, Plaintiff has failed to allege in his Complaint that he timely filed his charge of discrimination with the EEOC with respect to the instant claims, and that he subsequently received a Notice-of-Right-to-Sue.  See Doe, 2010 U.S. Dist. LEXIS 93270, at *6 (dismissing the Title VII claims because the plaintiffs did not "allege that they each presented their claims to the EEOC or received notice of a right to sue."); McCann, 2010 U.S. Dist. LEXIS 81045, at *5 (dismissing the Title VII claims because the complaint "does not allege that he presented his claims to the EEOC or received notice of his right to sue.").

Relatedly, while Plaintiff has submitted a Notice-of-Right-to-Sue to his opposition, that letter that does not contain any information about the underlying charge of discrimination.  See Pl.'s Br. in Opp. at pg. 8.  Instead, the letter merely states that, after conducting an investigation, "the EEOC is unable to conclude that the information obtained establishes violations of the statutes."  Id.  In addition, Plaintiff has not attached any documentation to show what charge of discrimination he filed with the EEOC.  See Horne v. A&M Medical Services, LLC, No. 17-3423, 2017 U.S. Dist. LEXIS 94608, at *4 n.1 (D.N.J. June 19, 2017).  Without that information, this Court cannot determine whether Plaintiff actually filed a charge with the EEOC about the alleged discrimination and retaliation after he was reinstated to his position at the NJOPD, and whether the EEOC issued a Notice-of-Right-to-Sue in connection with the claims in this Complaint.  Accordingly, the Court holds that Plaintiff has not shown that he exhausted his administrative remedies, and as such, his Title VII claims are dismissed without prejudice.  The Court grants Plaintiff leave to amend the Complaint, within thirty (30) days from the date of the Order accompanying this Opinion, to allege that he timely filed his charge of discrimination in connection with claims in his Complaint, and that he received a Notice-of-Right-to-Sue in that connection.

18

## IV.     CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is **GRANTED**. However, the Court grants Plaintiff leave to file an Amended Complaint, within thirty (30) days from the date of the Order accompanying this Opinion, to assert factual allegations that he has exhausted his administrative remedies under Title VII.


DATED: July 20, 2017					/s/ Freda L. Wolfson
							The Honorable Freda L. Wolfson
							United States District Judge